IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **SHERRY CRUZ, individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**ZENNI OPTICAL, INC.,**<br><br>Defendant. | Case No. 3:21-cv-3168<br><br>Hon. Sue E. Myerscough<br><br>Hon. Mag. Judge Tom Schanzle-Haskins |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

Respectfully submitted,

**Zenni Optical, Inc.**

Tiffany S. Fordyce (Bar No. 6295008)
Brett M. Doran (Bar No. 6286057)
Scott Dorsett (Bar No. 6329623)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
T: (312) 456-8400
F: (312) 456-8435
fordycet@gtlaw.com
doranb@gtlaw.com
dorsetts@gtlaw.com

**INTRODUCTION**

Plaintiff Sherry Cruz ("Cruz") agreed to be bound by Defendant Zenni Optical, Inc.'s ("Zenni") Terms of Use when she utilized Zenni's website, including her alleged use of the website's "Virtual Try-On" feature. Under the Terms of Use, Cruz agreed to submit her claims against Zenni to arbitration before JAMS as a single-plaintiff, not a putative class, action. Cruz, however, omits any mention of the Terms of Use in her Complaint. Nevertheless, the arbitration clause and class action waiver are valid, enforceable and preclude her lawsuit from proceeding in court. This Court should compel arbitration of Cruz's claims, and stay this proceeding pending the completion of arbitration.

If the Court declines to compel arbitration, Zenni alternatively requests that the Court dismiss or transfer this lawsuit pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(3). Cruz also agreed that, if the arbitration provision in the Terms of Use is determined not to apply, then any litigation filed by either Zenni or Cruz must be brought in state or federal court located in San Francisco, California. Cruz makes no allegations in her Complaint supporting that venue is proper in Illinois and, as such, her lawsuit should be dismissed or transferred to the Northern District of California. Alternatively, this matter should be transferred to the U.S. District Court for the Northern District of Illinois where a substantial part of the alleged events or omissions giving rise to the claim may have occurred.

Under all circumstances, it is improper for this matter to proceed in the Central District of Illinois, and Zenni respectfully requests that this Court grant this motion.

**I.    RELEVANT FACTUAL BACKGROUND**

**A.  Zenni's "Virtual Try-On" Software**

Zenni sells eyeglasses and other optical wear through its website, zennioptical.com. Compl.

¶6. One of the services available on Zenni's website is the ability to "virtually try on" eyeglass frames, which allows customers to see how a frame will look on their faces. Compl., ¶¶6-8.

### B. Cruz's Use of Zenni's Website and Agreement to the Terms of Use

Cruz alleges that she used Zenni's "Virtual Try-On" feature, in May 2021. Compl., ¶21.[1] To virtually try on eyeglass frames on Zenni's website, a user may navigate to the "Virtual Try-On" page from the Zenni homepage, or the user can navigate through the pages of the website, select the glasses they wish to "try on," and then select the "Try On" feature on the glasses page. Declaration of Sandy Griffith ("Griffith Decl.") attached as Exhibit 2, at ¶4. On nearly every page of Zenni's website, users are presented with a conspicuous hyperlink to Zenni's "Terms of Use," which is located adjacent to the hyperlink to Zenni's "Privacy Policy." *Id.* at ¶10. Zenni's Terms of Use is easily accessible to all website visitors by clicking on any of the number of pages that contain the hyperlink using the phrase "Terms of Use." *Id.*

Zenni's Terms of Use "apply when you access, use or visit [Zenni's] website located at www.zennioptical.com (the 'Site'), or the services we provide through the Site (the Site and these services constituting the 'Service')." Exhibit 2, at Exhibit B, Introductory Paragraph). Cruz agreed to the Terms of Use through her use of the Zenni website, as alleged in the Complaint.

Cruz alleges in her Complaint that Zenni violated various provisions of the Illinois Biometric Information Privacy Act ("BIPA"), including failure to provide appropriate notices and secure a release. Compl. at ¶¶56, 59–60. Because Zenni is an online retailer, the only way that Cruz could have reached this conclusion is by reviewing the Site, including the Terms of Use and

---

[1] Although Cruz did not allege when she used the Virtual Try-On feature in her Complaint, her counsel confirmed she last accessed it in May 2021, the same month she filed this lawsuit. *See* Email from Brandon Wise ("Wise") to Tiffany Fordyce ("Fordyce") attached as Exhibit 1). "The Court may consider matters outside the pleadings when ruling on a motion to stay the litigation and compel arbitration." *Scholz v. Americare at Adams Pointe Assisted Living, LLC*, No. 20-cv-3034, 2021 U.S. Dist. LEXIS 30725, at *6 (C.D. Ill. Feb. 19, 2021).

2

Privacy Policy. As noted, the "Terms of Use" hyperlink is located next to the "Privacy Policy" hyperlink at the bottom of nearly every page of the website. *See* Exhibit 2 at ¶¶5–6, 8-10.[2]

### C. The Relevant Provisions in The Terms of Use

The Terms of Use includes detailed alternative dispute resolution procedures, which Cruz ignored. For example, prior to initiating any sort of action, a claimant must first bring concerns to Zenni's attention and attempt to reach a resolution. Exhibit 2 at Exhibit B, ¶15(A). Such discussions "shall be a precondition to either party initiating a lawsuit or arbitration." *Id.* It is only after the parties fail to reach a resolution after 30 days that "either party may initiate binding arbitration." *Id.* at ¶15(B).

The Terms of Use includes an arbitration provision (the "Arbitration Clause"), which states, in pertinent part, as follows:

> All claims arising out of or relating to these Terms of Use (including their formation, performance and breach), the parties' relationship with each other and/or your use of the Service shall be finally settled by binding individual arbitration administered on a confidential basis by JAMS, in accordance with the JAMS Streamlined Arbitration Rules and Procedures, excluding any rules or procedures governing or permitting class arbitration. Each party will have the right to use legal counsel in connection with arbitration at its own expense. The parties shall select a single neutral arbitrator in accordance with the JAMS Streamlined Arbitration Rules and Procedures. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms of Use, including, but not limited to, any claim that all or any part of these Terms of Use is void or voidable. The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity. The arbitrator's award shall be in writing and provide a statement of the essential findings and conclusions, shall be binding on the parties and may be entered as a judgment in any court of competent jurisdiction. The interpretation and enforcement of these Terms of Use shall be subject to the Federal Arbitration Act.

*Id.* at ¶15. The Terms of Use also includes a class action waiver, which provides as follows:

> You and the Company each further agree that any arbitration shall be conducted in

---

[2] In addition, the Privacy Policy references, and includes two prominently located hyperlinks to, the Terms of Use. *See* Exhibit 2 at ¶¶9-10.

>your respective individual capacities only and not as a class action or other representative action, and you and the Company each expressly waive your respective right to file a class action or seek relief on a class basis.

*Id.*[3] The Arbitration Clause also provides the following consumer-friendly terms, related to the payment of arbitration fees:

>If you initiate arbitration, to the extent the filing fee for the arbitration exceeds Two Hundred and Fifty U.S. Dollars ($250.00), we will pay the additional cost. If we are required to pay the additional cost of the filing fees, you should submit a request for payment of fees to JAMS along with your form for initiating the arbitration, and we will make arrangements to pay all necessary fees directly to JAMS. We will also be responsible for paying all other arbitration costs arising in connection with the arbitration. You will not be required to pay fees and costs incurred by the Company if you do not prevail in arbitration.

*Id.* Moreover, the Arbitration Clause mandates that the arbitrator, not the court, must decide issues of arbitrability. *Id.* at ¶15(B) ("The arbitrator, and not any federal, state or local agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms of Use…").

### D. Cruz's Court Actions

Despite the Terms of Use, Cruz filed this putative class action in Circuit Court. *See* Compl. at ¶¶6–9, 20–32. Zenni has no record of Cruz opting out of the Terms of Use or even attempting to contact Zenni to do so. Exhibit 2 at ¶¶11–12.

At the time Cruz allegedly used the Virtual Try-On feature, Cruz, through her counsel of record in this case, had already filed <u>four</u> substantively identical putative class actions alleging violations of the BIPA against online retailers offering "virtual try on" features on their respective websites. *See* Complaints filed by Wise and Cruz, Group Ex. 3.[4] When Cruz visited the Zenni

---

[3] The class action waiver does not affect the enforceability of the Arbitration Clause. *See AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011) (arbitration agreements with class action waiver clauses are enforceable).
[4] *Cruz v. Ulta Beauty Inc.*, No. 2021-L-00064 (Sangamon Co., Ill.) (filed April 19, 2021) ("virtual try on" feature on cosmetics website); *Cruz v. M.A.C. Cosmetics Inc.*, No. 2021-L-00065 (Sangamon Co., Ill.) (filed April 19, 2021) ("virtual try on" feature on cosmetics website); *Cruz v. EyeBuyDirect Inc.*, No. 2021-L-00066 (Sangamon Co., Ill.)

4

website in May 2021, she plainly was shopping for a fifth "virtual try-on" BIPA class action.

## ARGUMENT

### A. The Federal Arbitration Act Requires Enforcement of the Arbitration Clause

The Arbitration Clause provides that "The interpretation and enforcement of these Terms of Use shall be subject to the Federal Arbitration Act" (the "FAA"). Exhibit 2 at Exhibit B, ¶15.[5] Section 2 of the FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2; *see also Scholz*, 2021 U.S. Dist. LEXIS 30725 at *5 ("The [FAA] provides that binding arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'") (quoting 9 U.S.C. § 2). Section 2 "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Where the parties have agreed to arbitrate a particular dispute, the FAA authorizes and requires the Court to enter an "order directing that such arbitration proceed in the manner provided for in such agreement" and "at any place therein provided for." 9 U.S.C. § 4.

The "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Concepcion*, 131 S.Ct. at 1748 (citations omitted); *see also Perry v. Thomas*, 482 U.S. 483, 490–91 (1987) (arbitration agreements falling within the scope of the FAA must be rigorously enforced). When determining whether a particular dispute should be

---

(filed April 19, 2021) ("virtual try on" feature on eyeglasses website); *Cruz v. Glasses USA Inc.*, No. 2021-L-00067 (Sangamon Co., Ill.) (filed April 19, 2021) ("virtual try on" feature on eyeglasses website).
[5] Even if the parties had not expressly agreed that the FAA governs the Arbitration Clause, the FAA would still control. The FAA applies to arbitration agreements in contracts involving interstate commerce. *See Preston v. Ferrer*, 552 U.S. 346, 353 (2008). As an agreement entered into over the internet, the Agreement involves interstate commerce. *See Sherman v. AT&T, Inc.*, No. 11-C-5857, 2012 U.S. Dist. LEXIS 40394, at *4–5 (N.D. Ill. Mar. 26, 2012).

arbitrated, a court should make its decision "with a healthy regard for the federal policy favoring arbitration…." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Moreover, any doubts should be resolved in favor of requiring arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, a motion to compel arbitration shall be granted where there is a valid agreement to arbitrate and the asserted claims are within the scope of the agreement. *Sharif v. Wellness Int'l Network, Inc.*, 376 F.3d 720, 726 (7th Cir. 2004) (citation omitted). Section 3 of the FAA provides that, where a suit is compelled to arbitration, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

Section 3 of the FAA provides that, where a suit is compelled to arbitration, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…." 9 U.S.C. § 3. The Terms of Use satisfies all requirements of the FAA. Zenni respectfully requests that this Court stay this action pending the outcome of the arbitration. *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732, n.7 (7th Cir. 2005) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration rather than to dismiss outright.").

**B. The Arbitration Clause Requires Cruz to Arbitrate Her Claims**

    **1.**     <u>**A Valid Agreement Exists Between Cruz and Zenni**</u>

The Terms of Use, including the Arbitration Clause, is valid and enforceable. "The Court applies state-law contract formation principles to determine whether a contract's arbitration clause

6

applies to the dispute." *Viehweg v. Sirius XM Radio, Inc.*, No. 17-3140, 2018 U.S. Dist. LEXIS 76435, at *8 (C.D. Ill. May 7, 2018). "In Illinois, the basic requirements necessary for contract formation are an offer, acceptance, and consideration." *TAS Distrib. Co. v. Cummins, Inc.*, No. 07-cv-1141, 2009 U.S. Dist. LEXIS 26993, at *21 (C.D. Ill. Mar. 31, 2009) (citation omitted). Here, all elements are satisfied as reflected in the Terms of Use and Cruz's allegation in her Complaint that she utilized Zenni's Virtual Try-On feature.

The Terms of Use is enforceable as a "browsewrap" agreement, which does "not require the user to manifest assent to the terms and conditions expressly—the user need not sign a document or click an 'accept' or 'I agree' button." *Southwest Airlines v. Boardfirst, L.L.C.*, No. 06-cv-0891-B, 2007 U.S. Dist. LEXIS 96230, at *14 (N.D. Tex. Sept. 12, 2007). Instead, such agreements typically "involve a situation where notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink." *Id.* Thus, a party gives his or her assent simply by using the website. *Id.* (citing *Pollstar v. Gigmania, Ltd.*, 170 F. Supp. 2d 974, 981 (E.D. Cal. 2000)). Such was the case here, as Cruz assented to the Terms of Use through her use of Zenni's website.

A browsewrap agreement is enforceable "when there is actual or constructive knowledge of terms." *Alan Ross Mach. Corp. v. Machinio Corp.*, No. 17-cv-3569, 2018 U.S. Dist. LEXIS 113012, at *12 (N.D. Ill. July 9, 2018). "When there is no evidence that users had actual knowledge of the terms at issue, the validity of a browsewrap contract hinges on whether a website provided reasonable notice of the terms of the contract…" *Id.* Here, Cruz either had actual or constructive knowledge of the Terms of Use.

Based on the allegations in her Complaint, Cruz likely had actual notice and, at a minimum, constructive notice of the Terms of Use. Cruz's own allegation make clear she reviewed and

7

searched on Zenni's website for a privacy policy that would have informed her that her biometric identifiers and information were being obtained, why they were being obtained, and for how long they would be stored. Compl. at ¶56. Cruz also alleges that Zenni did not disclose its retention or destruction schedule. *Id*. at ¶¶59–60.

In reviewing Zenni's website for these written policies and statements, Cruz must have searched the Terms of Use, which is located at the bottom of nearly every page of the website in a prominent hyperlink titled "Terms of Use," which is adjacent to the hyperlink to Zenni's "Privacy Policy." *See* Exhibit 2 at ¶10. Cruz cannot allege in good faith that Zenni's website lacks the aforementioned disclosures without reviewing, or at a minimum being aware of, the Terms of Use. *See PDC Labs., Inc. v. Hach Co.*, No. 09-1110, 2009 U.S. Dist. LEXIS 75378, at *7–8 (C.D. Ill. Aug. 25, 2009) (plaintiff had constructive notice of Terms & Conditions of Sale because three separate pages plaintiff visited to make an online purchase displayed conspicuous hyperlinks to the terms Terms).

Further, when Cruz visited Zenni's website in May 2021, she had already filed four identical putative class actions alleging BIPA violations in connection with her alleged use of "virtual try on" features on other websites. Given Cruz's knowledge and acute concern for bringing putative class actions in connection with the use of Virtual Try-On features, the Court can reasonably conclude that Cruz was sophisticated in, and capable of, locating and reviewing terms of use and privacy policies to determine if she had a viable BIPA claim. There is no doubt Cruz, had either actual or constructive notice of the Terms of Use, Arbitration Clause and class action waiver. This Court should compel arbitration on this basis alone.

Putting this aside, constructive notice also is established by the conspicuous placement of the Terms of Use on each page of the Zenni website. *See PDC Labs., Inc. v. Hach Co.*, No. 09-

1110, 2009 U.S. Dist. LEXIS 75378 (C.D. Ill. Aug. 25, 2009). In nearly all pages of Zenni's website, users are presented with a hyperlink to Zenni's Terms of Use either at the bottom of the page or on the left side of the page. Exhibit 2 at ¶10. The hyperlinks to the Terms of Use are displayed in prominent blue, contrasting text. *Id*. A visitor need only click on the Terms of Use to access the document. *Id.* at ¶6. It is undisputed that the Terms of Use was displayed on all of the website's pages that allowed users to access the Virtual Try-On feature. *Id.* at ¶¶5 & 8.

### 2. The Arbitration Clause is Neither Procedurally Nor Substantively Unconscionable

A court may strike an arbitration provision if it is unconscionable. Under Illinois law, a finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both. *Harris v. DirectTV Group, Inc.* No. 07 C 3650, 2008 U.S. Dist. LEXIS 8240, *7 (N.D. Ill. Feb. 5, 2008) (citing *Kinkel v. Cingular Wireless LLC,* 223 Ill.2d 1 (Ill. 2006)). The party asserting unconscionability bears the burden of proof. *Winkler v. Total Quality Logistics, LLC,* No. 18-C-3707, 2018 U.S. Dist. LEXIS 210176, at *5 (N.D. Ill. Dec. 13, 2018). "Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it . . . ." *Kinkel*, 223 Ill. 2d at 22 (citations omitted). "[S]ubstantive unconscionability refers to terms that are inordinately one-sided in one party's favor." *Id.* at 28 (internal quotations and citations omitted). Here, the Arbitration Clause is neither procedurally nor substantively unconscionable. It appears conspicuously and is labeled in all caps "LEGAL DISPUTES AND ARBITRATION AGREEMENT AND RIGHT TO OPT OUT." Each subsection is easy to read and clearly labeled with headings such as Agreement to Binding Arbitration, Class Action and Arbitration Waiver and 30 Day Right to Opt Out. Exhibit 2 at Exhibit B, ¶15.

Nor is the Arbitration Clause inordinately one-sided, as evidenced by the fact that Zenni

agrees to pay most of the cost of the arbitration, and allows the consumer to opt out of the provision altogether. *Id.,* ¶¶ 15(B) & (E). Indeed, in *Harris supra,* the court held that an arbitration provision with a class action waiver was not substantively unconscionable where Direct TV, like Zenni, capped the arbitration initiation fees and agreed to pay the difference. *Harris*, No. 07 C 3650, at *11–15 (N.D. Ill. Feb. 5, 2008). Relatedly, "[t]he presence of an arbitration opt-out clause weighs heavily against a finding of procedural unconscionability." *O'Neil v. Comcast Corp.*, No. 18-C-4249, 2019 U.S. Dist. LEXIS 31031, at *16 (N.D. Ill. Feb. 27, 2019). As noted above, Cruz never contacted Zenni to opt out of the Arbitration Clause. Exhibit 2 at ¶12.

*PDC Labs.* is illustrative of Zenni's unconscionability argument. In that case, plaintiff argued that it was not bound by the defendant's Terms & Conditions of Sale, which was part of a broswewrap agreement. Plaintiff argued "[the Terms] were not sufficiently conspicuous, and, therefore, their inclusion would be procedurally unconscionable." *PDC Labs., Inc.*, No. 09-1110, at *5 (C.D. Ill. Aug. 25, 2009). The *PDC Labs* court noted that "[e]xamples of conspicuous presentation of a term include any means to set the term or the term's heading apart from nearby terms such as differing the term or heading's color, size, font, or other noticeable means of contrast." *Id.* at *6–7. Finding in favor of the plaintiff, the court found that the defendant gave reasonable notice of its terms to the plaintiff because "the Terms were hyperlinked on three separate pages of the online Plate order process in underlined, blue, contrasting text." *Id.* at *8. Zenni's Terms of Use are even more conspicuously displayed because, unlike the defendant in *PDC labs*, Zenni placed its Terms of Use on nearly *every* page of its website. Moreover, like the *PDC Labs* defendant, Zenni uses contrasting blue text, which further highlights the existence of the Terms of Use. Exhibit 2 at ¶¶ 5-6, 8-9. The *PDC Labs* court held that using "contrasting text is sufficient to be considered conspicuous, even though the Terms are only linked three times

instead of five times, because it is not the repetition of the display of a term that is determinative but the contrast of a term." *PDC Labs., Inc.*, No. 09-1110, at *5 (C.D. Ill. Aug. 25, 2009) (citing *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 987 (5th Dist. 2005)). In light of *PDC Labs*, Zenni's blue, contrasting hyperlinks on almost every page of its website—including the pages that a user must visit to use the Virtual Try-On feature (Exhibit 2 at ¶¶4–5, 8, 10)—provided Cruz with reasonable, constructive notice of the Terms of Use.

### 3.     The Agreement Encompasses the Dispute at Issue.

Courts consistently hold that broad arbitration clauses, such as those containing the language "relating to" or "arising out of," as is the case here, "necessarily create a presumption of arbitrability." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999). Further, "[a] court may not deny a party's request to arbitrate unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Midwest Fin. Holdings, LLC v. P&C Ins. Sys.*, No. 07-3156, 2007 U.S. Dist. LEXIS 90102, at *8 (C.D. Ill. Dec. 7, 2007); *see also Andermann v. Sprint Spectrum L.P.*, 785 F.3d 1157, 1159-60 (7th Cir. 2015) (enforcing arbitration provision).

Cruz alleges Zenni failed to comply with BIPA by collecting, capturing, and using her biometric information without her consent, and failing to comply with BIPA standards regarding retention policies and written releases. Compl., ¶¶20–29. Pursuant to the Arbitration Clause, *"[a]ll claims arising out of or relating to* these Terms of Use (including their formation, performance and breach), the parties' relationship with each other and/or *your use of the Service shall be finally settled by binding individual arbitration* …" Exhibit 2 at Exhibit B, ¶15 (emphasis added). As alleged, Cruz's claims relate to her use of Zenni's "Virtual Try-On" feature—*i.e.*, "the Service"— on Zenni's website. Compl., ¶¶20–24. These claims plainly are within the scope of the Terms of

11

Use.

####     4.     The Arbitrator Must Decide Arbitrability

Another reason a stay is proper is because the Arbitration Clause provides that the arbitrator, not any court, must decide if the Arbitration Clause is enforceable. Exhibit 2 at Exhibit B, ¶15(B). When an arbitration provision states that an arbitrator should determine the arbitrability of claims, courts should refrain from making such decisions, and instead send the dispute to arbitration. *Youssef v. Uber Tech., Inc.,* No 19-cv-8106, 2020 U.S. Dist. LEXIS 247937, at *4–5, *8 (N.D. Ill. March 6, 2020). Such provisions are routinely enforced in arbitration clauses. *See, e.g.*, *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC,* 51 F.Supp.3d 713, 719 (N.D. Ill. 2014) (staying case because the agreement provided the arbitrator with the authority to decide whether the dispute should be arbitrated).

For all the foregoing reasons, Zenni respectfully requests that the court enforce the Arbitration Clause, compel the parties to arbitration and stay this action.

### C. In the Alternative, the Court Should Dismiss or Transfer this Matter to the U.S. District Court for the Northern District of California or the Northern District of Illinois

In the event this Court does not compel arbitration, Zenni moves to transfer this action to the Northern District of California or, alternatively, to the Northern District of Illinois, pursuant to Rule 12(b)(3).[6] The enforceable Terms of Use includes a forum selection clause, which contains "[m]andatory language [that] indicates that the parties have selected a particular forum" for any disputes arising out of the agreement. *IFC Credit Corp. v. Burton Indus.*, No. 04-C-5906, 2005 U.S. Dist. LEXIS 10471, at *6 (N.D. Ill. May 12, 2005). Pursuant to the Terms of Use, Cruz

---

[6] In ruling on a motion to transfer venue, a court may either dismiss a case or transfer it. *Starr Indem. & Liab. Co. v. Luckey Logistics*, No. 1:16-cv-01377-JBM-JEH, 2017 U.S. Dist. LEXIS 88090, at *15 (C.D. Ill. June 7, 2017) ("When a district court is an improper venue, the Court shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought.") (internal quotations and citation omitted).

consented to the following forum selection clause:

> To the extent that the arbitration provisions set forth in Section 15(B) do not apply, the parties agree that any litigation between them shall be filed exclusively in state or federal courts located in San Francisco, CA (except for small claims court actions which may be brought in the county where you reside). The parties expressly consent to exclusive jurisdiction in San Francisco, California for any applicable litigation other than small claims court actions.

Exhibit 2 at Exhibit B, ¶15(F).

A party consents to a forum selection clause when (1) the agreement contains a forum-selection clause and (2) the clause is enforceable. *Macey & Aleman v. Simmons*, No. 10-cv-06646, 2011 U.S. Dist. LEXIS 41117, at *6 (N.D. Ill. Apr. 14, 2011) (internal quotations and citation omitted). The Terms of Use are clear, unequivocal, and require that if the Arbitration Clause does not apply, then any litigation must be brought in a state or federal court in San Francisco, which is in the Northern District of California.[7] Exhibit 2 at Exhibit B, ¶15(F). "A forum selection clause is prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable under the circumstances." *Macey*, 2011 U.S. Dist. LEXIS 41117, at *8–9 (internal quotations and citation omitted). "Mere inconvenience to a party is insufficient to invalidate a forum selection clause, and courts will enforce such clauses unless enforcement contravene[s] the strong public policy of the forum or the chosen forum [is] seriously inconvenient for the trial of the action." *Id.* at *9 (internal quotations and citation omitted). Neither exception applies in this case, and Cruz is bound by the forum selection clause. In deference to the Terms of Use, the Court should dismiss this matter for improper venue, or transfer it to the Northern District of California.

Venue should also be transferred to the Northern District of California pursuant to 28 U.S.C. § 1391(a). Venue in a district court is only proper in:

(1) a judicial district where any defendant resides, if all defendants reside in the

---

[7] *See* Northern District of California Jurisdiction map at Jurisdiction Map | United States District Court, Northern District of California (uscourts.gov) (last visited 9/2/2021).

> same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). "In ruling on a motion to dismiss for improper venue, the Court accepts as true all well-pleaded allegations in the complaint unless they are contradicted by affidavit." *CNH Am., LLC v. Equip. Direct-USA, LLC*, 2010 U.S. Dist. LEXIS 42633, at *3 (C.D. Ill. Apr. 1, 2010). S*ee also Gragg v. ITT Technical Institute*, No. 14-cv-3315, 2016 U.S. Dist. LEXIS 25337, at *22 (C.D. Ill. Feb. 28, 2016) (court can consider evidence outside of pleadings in considering a motion under Rule 12(b)(3) challenging venue) (citing *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011)). "When a defendant challenges venue, the plaintiff bears the burden of establishing proper venue." *John Crane*, 2017 U.S. Dist. LEXIS 41840 at *21.

Zenni is the sole defendant in this case, and is located in Novato, California. Ex. 4, California Secretary of State Statement of Information.[8] Novato is located in Marin County and, like San Francisco, also falls within the jurisdiction of the Northern District of California.[9] *See* 28 U.S. Code § 1391(a)(1), (c)(2).

Because venue would be proper in the Northern District of California, proper venue can exist in this Court only if "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" within this Court's jurisdiction. Notably, Cruz does not allege the events or omissions giving rise to her claims took place within the jurisdiction of this Court or Sangamon County, where Cruz initially filed her

---

[8] This Court can take judicial notice of a party's state of incorporation via notice of filings with the Secretary of State. *City of Waukegan v. Bond Safeguard Ins. Co.*, No. 15-C-3007, 2015 U.S. Dist. LEXIS 151052, at *5 (N.D. Ill. Nov. 6, 2015).
[9] *See* Northern District of California Jurisdiction map at [Jurisdiction Map | United States District Court, Northern District of California (uscourts.gov)](#) (last visited 9/2/2021).

14

Complaint before it was removed to this Court. Cruz's only allegation relating to venue states "upon information and belief Defendant does business in this county," which is irrelevant to establishing proper venue in a District Court. Compl., ¶5. Cruz further alleges that she used Zenni's "Virtual Try-On" feature, which gave rise to her Complaint, but fails to allege *where* she used the feature. Given these allegations, Cruz has failed to establish, or even suggest, that venue is proper in this Court. *See Jones v. Hoosier Energy Rural Elec. Coop.*, No. 17-cv-03226, 2018 U.S. Dist. LEXIS 166998, at *12–17 (C.D. Ill. Sept. 28, 2018). *Linehan v. Nugget*, No. 05-c-7030, 2008 U.S. Dist. LEXIS 83619, at *21–22 (N.D. Ill. Sept. 5, 2008) (finding venue improper because no allegations established that venue was proper under the three avenues established by 28 U.S.C. § 1391).

While not a single allegation in the Complaint points to the Central District as the proper venue, an inference exists that the only possible proper venue in Illinois is the Northern District, as this is the most likely location where a substantial part of the events or omissions giving rise to this claim occurred. Although Cruz failed to disclose in her complaint where she resides and where she utilized the Virtual Try-On feature, her counsel confirmed that Cruz resides in Cook County, Illinois. Ex. 5, August 17, 2021 email from Wise to Fordyce. Plaintiff's counsel's admission underscore the lack of connection to Sangamon county and the Central District.

For the foregoing reasons, Cruz's Complaint should be dismissed for improper venue or, in the alternative, transferred to the Northern District of California or, alternatively, the Northern District of Illinois.

## CONCLUSION

For the foregoing reasons, Defendant Zenni Optical, Inc. respectfully requests that the Court grant this Motion, stay this action and compel arbitration.

## CERTIFICATE OF SERVICE

I, Scott Dorsett, hereby certify that on September 8, 2021, I electronically submitted the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO TRANSFER** document with the clerk of court for the United States District Court for the Central District of Illinois, using the electronic case filing system of the court. I hereby certify that I have served all documents required to be served upon counsel of record electronically or by email at the following addresses:

Brandon Wise
bwise@peifferwolf.com

Aaron Siri
aaron@sirillp.com

Mason Barney
mbarney@sirillp.com

/s/ *Scott Dorsett*